**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **BEYKER ORTIZ MORENO,**<br>**Petitioner,**<br>**v.**<br>**PAM BONDI, et al.,**<br>**Respondents.** | **Civil Action No. 25-18779 (RK)**<br><br>**MEMORANDUM OPINION** |

This matter has been opened to the Court by Petitioner's filing of an Amended Petition, a Supplement to the Amended Petition, a Motion for an Order to Show Cause, a Motion for a Temporary Restraining Order, and a request for a Rule 16 conference. (ECF Nos. 10, 18, 26, 28, 29.) The Court has considered the parties' arguments, and for the reasons explained below, denies the Amended Petition, the related motions, and the request for a Rule 16 conference.

## I. RELEVANT BACKGROUND

Petitioner is a Venezuelan citizen who entered the United States on June 12, 2022 without inspection or admission. (*See* ECF No. 21-1 (I-213).) According to the I-213 Record produced by Respondents, he was apprehended by United States Border Patrol on the same date but was paroled due to lack of bed space. (*Id.*)

It is undisputed that Petitioner held valid Temporary Protected Status ("TPS") from June 11, 2024 to April 2, 2025. (ECF No. 18-2 (TPS Approval Notice).) On February 1, 2025, United States Citizenship and Immigration Services ("USCIS") acknowledged receipt of Petitioner's application to renew his TPS (ECF No. 18-3), but USCIS neither granted nor denied that application.

On November 23, 2025, ICE detained Petitioner pursuant to a warrant for his arrest. (*See* ECF No. 21-1 (I-213).) That same day, a Notice to Appear was filed with immigration court commencing removal proceedings. (*See* ECF No. 21-2 (Notice to Appear).)

On January 6, 2026, the Immigration Court ordered Petitioner removed to Ecuador pursuant to an Asylum Cooperation Agreement. (*See* 21-3 (IJ Order of Removal).) On February 3, 2026, Petitioner filed an appeal with the Board of Immigration Appeals ("BIA") (*See* ECF No. 21-4 (BIA Appeal receipt)), which remains pending.

Petitioner filed a habeas petition in this Court on December 18, 2025, challenging his detention without bond under Section 1225(b)(2).[1] On February 6, 2026, this Court determined that Petitioner was unlawfully detained under § 1225(b) and directed Respondents to provide him with a bond hearing under 8 U.S.C. § 1226(a). (ECF No. 4.) The Court's Text Order also enjoined Respondents from transferring Petitioner from his current detention facility. (*Id.*)

On February 9, 2026, Respondents notified the Court that Petitioner was moved from this District on February 3, 2026, and booked into the Northwest ICE Processing center on February 5, 2026, prior to this Court's February 6 Order, which enjoined Respondents from transferring him. (ECF No. 6.) On February 12, 2026, Respondents notified the Court that the Immigration Court conducted a bond hearing and denied bond on the basis of flight risk. (ECF No. 7.) Following that status update, the Court closed the matter. (ECF No. 8.)

Shortly thereafter, Petitioner filed an Amended Petition, a Motion for a Temporary Restraining Order ("TRO Motion"), and a Motion to Reopen, arguing that he was deprived of due process in his bond proceeding because the government did not prove he is a flight risk by clear

[1] On the civil cover sheet, Petitioner's counsel listed the action's nature of suit as both NOS 465 and NOS 463, and it was initially docketed as the wrong type of civil action. (ECF No. 1-1.)

and convincing evidence. (*See* ECF No. 10 at 5; ECF No. 10-1, 10-2.) The Court reopened the matter and directed Respondents to answer the Amended Petition but denied Petitioner's TRO Motion because he did not establish a likelihood of success on that claim given the Third Circuit's precedential decision in *Borbot v. Warden Hudson Cnty. Correctional Facility*, 906 F.3d 274, 279 (3d Cir. 2018), which rejected the petitioner's argument that the government should bear the burden in a § 1226(a) bond proceeding to show that the petitioner is a flight risk or danger to the community. (ECF No. 12.) The government filed an Answer to the Amended Petition (ECF Nos. 14-16) and Petitioner filed a reply brief, raising new issues. (ECF No. 17.) Petitioner argued in his reply brief that his initial bond hearing was fundamentally unfair, based on his counsel's recollection of the bond hearing proceedings and other factors. He also asked the Court to grant the Petition based on a Northern District of California case, *National TPS Alliance v. Kristi Noem*, Civil Action No.: 3:25-cv-01766. (*See* ECF No. 17.)

Petitioner also filed a Supplement to his Amended Petition arguing that a declaratory judgment issued on December 10, 2025, by the Northern District of California in *National TPS Alliance* "has preclusive effect in Petitioner's habeas case, controlling the legal question of whether members of the National TPS Alliance. . ., such as Petitioner, retain their TPS status." (ECF No. 18 at 1.) The Court directed Respondents to respond, and Respondents filed a response opposing relief. Petitioner also filed a reply brief. (ECF Nos. 20-22.)

Petitioner has filed two additional motions for relief in connection with this claim seeking his immediate release. (ECF Nos. 26, 28.) He has also filed a motion for a Rule 16 conference, which Respondents oppose. (ECF Nos. 29-30.)

## II. DISCUSSION

Under 28 U.S.C. § 2241, a district court may exercise jurisdiction over a habeas petition when the petitioner is in custody and alleges that his custody violates the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2241(c); *Maleng v. Cook*, 490 U.S. 488, 490 (1989). A petitioner may seek § 2241 relief only in the district in which he or she is in custody. *United States v. Figueroa*, 349 F. App'x 727, 730 (3d Cir. 2009). This Court has habeas jurisdiction over Petitioner's claims as Petitioner was detained within this district when he filed his original petition and he alleges violations of federal law.

### a. The Bond Hearing Challenge

The Court first addresses Petitioner's challenges to his February 12, 2026 bond hearing. Under 8 U.S.C. § 1226(e), federal courts "lack jurisdiction to review any discretionary determinations underlying the IJ's bond decision," and "are limited to reviewing only . . . challenges that pertain to the adequacy of process [petitioner] received at [her] bond hearing." *Quinteros v. Warden Pike Cnty. Correctional Facility*, 784 F. App'x 75, 78 (3d Cir. 2019). "In a fundamentally fair bond hearing, due process has three essential elements." *Ghanem v. Warden Essex Cnty. Corr. Facility*, Civ. A. No. 21-1908, 2022 WL 574624, at *2 (3d Cir. Feb. 25, 2022). The noncitizen "(1) is entitled to factfinding based on a record produced before the decisionmaker and disclosed to him or her; (2) must be allowed to make arguments on his or her own behalf; and (3) has the right to an individualized determination of his [or her] interests." *Id.* (quoting *Kamara v. Att'y Gen. of U.S.*, 420 F.3d 202, 211 (3d Cir. 2005)). A court may not grant relief merely because it believes the IJ should have weighed the evidence differently, as that argument challenges a discretionary determination that district courts may not review. *See Ghanem*, 2022 WL 574624, at *2.

In his reply brief, Petitioner's attorney states that Petitioner's bond hearing was delayed for several hours (ECF No. 17 at 2), but this Court finds that a short delay does not render the bond hearing fundamentally unfair. He also argues that Petitioner's removal proceedings and transfer were unfair, arguments which do not address the fairness of the bond hearing itself. (*Id.* at 2-3.) Petitioner further argues that he provided ample evidence that he is not a flight risk, and that the IJ predetermined the issue. (*Id.*) The allegation that the IJ predetermined the issue is conclusory, and the Court may not reweigh the evidence and overturn the IJ's findings. For these reasons, Petitioner has not shown that his bond hearing was fundamentally unfair, and the Court denies relief on this claim.

Petitioner's burden allocation claim in the Amended Petition is otherwise foreclosed by *Borbot v. Warden Hudson Cnty. Correctional Facility*, 906 F.3d at 278-79, as he was not denied due process in his bond hearing or detained for a prolonged period prior to receiving a bond hearing under § 1226(a). The Third Circuit recognized in *Borbot* that "despite an initial bond hearing, detention under § 1226(a) might become unreasonably prolonged, whether by virtue of government delay or some other cause." *Id.* at 280. Here, Petitioner was detained in late November 2025, and the Court granted habeas relief and ordered a bond hearing under 8 U.S.C. § 1226(a) on February 6, 2026. The IJ denied bond on February 12, 2026 after finding Petitioner to be a flight risk. Although he has been detained for over six months since his last bond hearing and approximately 10 months in total, he does not raise a prolonged detention as a basis for relief in his Amended Petition; should his detention become unreasonably prolonged, Petitioner may raise that claim in a future petition in the district of confinement.

**b. The TPS-Related Claims**

The Court next addresses Petitioner's TPS-related claims. As part of the Immigration Act of 1990, Congress created the TPS program to provide humanitarian relief due to war, natural disasters, or other extraordinary and temporary conditions to foreign nationals from specified countries. *See* 8 U.S.C. § 1254a; *see also Sanchez v. Mayorkas*, 593 U.S. 409, 412 (2021). The Secretary of Homeland Security ("Secretary") is authorized to designate foreign countries for temporary protected status under certain conditions. 8 U.S.C. § 1254a(b)(1). The initial designation lasts for 6, 12, or 18 months, at the Secretary's discretion. *See* § 1254a(b)(2). "There is no judicial review of any determination of the Attorney General with respect to the designation, or termination or extension of a designation, of a foreign state under this subsection." *See* § 1254a(b)(5)(A).

Noncitizens found eligible for the TPS program are entitled to certain benefits, including temporary protection from removal and authorization to engage in employment in the United States. *See* § 1254a(a)(1). Such noncitizens are not automatically entitled to TPS benefits; they must submit a registration application for processing and approval. § 1254a(c)(1)(A); *see also* 8 C.F.R. § 244.6. Under 8 U.S.C. § 1254a(d)(4), a noncitizen "provided temporary protected status . . . shall not be detained by the Attorney General on the basis of [his or her] immigration status in the United States." Relevant officials "shall not remove the [noncitizen] from the United States during the period in which [TPS] is in effect." 8 U.S.C. § 1254a(a)(1)(A).

"A TPS designation for an individual can be removed in two ways." *Fernandez v. Noem*, No. 1:26-cv-01999-KES-CDB (HC), 2026 WL 2085889, at *11 (E.D. Cal. July 20, 2026). First, TPS may be withdrawn for any of the grounds listed in 8 C.F.R. § 244.14(a), but such withdrawal "shall be in writing and served by personal service." 8 C.F.R. § 244.14(b)(1). Second, the

government may terminate TPS for all noncitizens of a certain foreign state under 8 C.F.R. § 244.19.[2]

Petitioner asserts that he holds valid TPS status and his detention is unlawful under 8 U.S.C. § 1254a(d)(4). There is no evidence before the Court that Respondents terminated Petitioner's TPS status individually in writing and by personal service pursuant to 8 C.F.R. § 244.14.[3] However, as explained below, Respondents maintain that the Secretary terminated TPS for all noncitizens of Venezuela prior to Petitioner's detention in late November 2025.[4]

By way of background, then-DHS Secretary Alejandro Mayorkas initially designated Venezuela for TPS in March 2021 and renewed the country's TPS designation on October 3, 2023, with a projected end date of April 2, 2025. Designation of Venezuela for Temporary Protected Status and Implementation of Emp. Authorization for Venezuelans Covered by Deferred Enforced Departure, 86 Fed. Reg. 13574 (Mar. 9, 2021); Extension and Redesignation of Venezuela for Temporary Protected Status, 88 Fed. Reg. 68130 (Oct. 3, 2023). On January 17, 2025, Secretary

---

[2] That regulation reads as follows:

> Upon the termination of designation of a foreign state, those nationals afforded temporary Protected Status shall, upon the sixtieth (60th) day after the date notice of termination is published in the Federal Register, or on the last day of the most recent extension of designation by the Attorney General, automatically and without further notice or right of appeal, lose Temporary Protected Status in the United States. Such termination of a foreign state's designation is not subject to appeal.

8 C.F.R. § 244.19.

[3] The I-213 Record states without explanation that USCIS terminated Petitioner's TPS on November 20, 2025. (*See* ECF No. 21-1 (I-213).) Respondents have not submitted any documentation showing that USCIS sent Petitioner an individual termination notice.

[4] Respondents also argue that Petitioner's timely renewal paperwork does not extend his TPS status unless USCIS formally grants his application (ECF No. 21 at 6); however, the Court need not reach this argument.

Mayorkas extended the 2023 designation to October 2, 2026. *See* Extension of the 2023 Designation of Venezuela for Temporary Protected Status, 90 FR 5961 (Jan. 17, 2025). In February 2025, Secretary Kristi Noem issued a notice vacating the 2025 extension and terminating the 2023 designation. *See* Vacatur of 2025 Temporary Protect Status Decision for Venezuela, 90 Fed. Reg. 8805 (Feb. 3, 2025); Termination of the Oct. 3, 2023, Designation of Venezuela for Temporary Protected Status, 90 Fed. Reg. 9040 (Feb. 5, 2025).

The termination of TSP for Venezuelans is the subject of federal litigation brought by National TPS Alliance, an organizational plaintiff, and seven individual TPS holders. *See National TPS Alliance v. Noem*, 150 F.4th 1000, 1008 (9th Cir. 2025). Petitioner alleges he is a member of National TPS Alliance, and has provided an undated letter as proof of his membership. (ECF No. 18-4.)

Pertinent to that litigation, on September 5, 2025, the district court for the Northern District of California held that Secretary Noem lacked the statutory authority to vacate Secretary Mayorkas' extension of the 2023 TPS designation for Venezuela and exceeded her authority when she purported to invalidate documentation that had already been issued pursuant to the extension. *See Nat'l TPS All. v. Noem*, 798 F. Supp. 3d 1108, 1144-47 (N.D. Cal. 2025). The District Court vacated the Secretary's actions under section 706 of the Administrative Procedure Act ("APA") and entered judgment in favor of plaintiffs on their claims related to vacatur and termination of the TPS designation for Venezuela. *Id.* at 1160–62, 64. On October 3, 2025, the Supreme Court stayed the district court's order "pending the disposition of the Government's appeal in the United States Court of Appeals for the Ninth Circuit and disposition of a petition for a writ of certiorari, if such writ is timely sought." *Noem v. Nat'l TPS All.*, ––– U.S. ––––, 146 S. Ct. 23, 24, 222 L.Ed.2d 1241 (2025).

The litigation continued, however, and on December 10, 2025, the district court for the Northern District of California granted the plaintiffs' motion for declaratory relief, holding that "(1) the vacatur of the January 17, 2025, TPS extension for Venezuela was unlawful as was (2) the termination of Venezuela's 2023 TPS designation on February 5, 2025." *Nat'l TPS All. v. Noem*, No. 25-cv-01766-EMC, 2025 WL 3539156, at *2 (N.D. Cal. Dec. 10, 2025). The district court noted that "the declaratory relief issued here may help preserve the pending status quo for individual members of the NTPSA. Plaintiffs have indicated an intent to preserve the status quo of individual members, possibly in individual actions where an individual member might receive some benefit from the declaratory judgment." *Id.* The Court also clearly recognized, however, that, unlike the injunctive relief previously it ordered, "the declaratory relief would simply be an adjudication of a case or controversy between the parties." *Id.* at *3. The district court stayed the order for two weeks to provide the government an opportunity to appeal the decision. *See id.*

The government filed an appeal, and on January 28, 2026, the Ninth Circuit ruled that district court "did not abuse its discretion by setting aside each of the Secretary's unlawful Venezuela Vacatur, Venezuela Termination, and Haiti Partial Vacatur in full." *Nat'l TPS All. v. Noem*, 166 F.4th 739, 768 (9th Cir. 2026), pet for r'hrng en banc den'd, 169 F.4th 796. On July 9, 2026, the government filed a petition for writ of certiorari to the U.S. Supreme Court challenging the Ninth Circuit's January 28, 2026, decision in National TPS Alliance, which remains pending.

As a legal matter, the district court's vacatur of the Secretary's termination of TSP for Venezuela remains stayed by the Supreme Court until the disposition of the petition for a writ of certiorari. *See Noem v. Nat'l TPS All.*, —— U.S. ——, 146 S. Ct. 23, 24 (2025). Therefore, the termination of TPS for Venezuela is still in effect.

Despite the Supreme Court stay, Petitioner contends that the December 10, 2025 Declaratory Judgment issued by the Northern District of California is controlling in this habeas proceeding and requires Petitioner's release. The Court disagrees. *See Rubio v. Francis*, 26 Civ. 264, 2026 WL 811178, at *10 (S.D.N.Y. Mar. 23, 2026) (internal citations omitted) (rejecting the petitioner's claim that his membership in National TPS Alliance satisfied the "same parties" requirement for collateral estoppel and holding that nonmutual offensive collateral estoppel is inapplicable against the government). Setting aside the propriety of the December 10 Declaratory Judgment, Petitioner is not a party in *National TPS Alliance* and is not automatically entitled to the benefit of that judgment, which resolves the rights of the parties to that litigation. *See Jimenez-Melendez v. Oddo*, No. 26-1146, 2026 WL 2123059, at *4 (W.D. Pa. Jul. 23, 2026) (finding that the petitioner was not entitled to the benefit of the Declaratory Judgment in National TPS Alliance where there was no evidence that he was a party to that litigation). At best, the December 10 Declaratory Judgment and the Ninth Circuit's affirmance are non-binding decisions that may be legally persuasive in this proceeding.

Here, however, the legal reasoning underpinning those decisions have been undermined by the Supreme Court's recent decision in *Mullin v. Doe*, 609 U.S. ——, 146 S. Ct. 2121, 225 L.Ed.2d 594, 2026 WL 1825840, at *7 (U.S. Jun. 25, 2026), which held that 8 U.S.C. § 1254a(b)(5)(A) precludes judicial review of all non-constitutional claims related to TPS. *Mullin* considered challenges to the termination of TPS for Syria and Haiti,[5] and the Supreme Court held broadly that there is no judicial review of the Secretary's TPS determinations:

> The TPS statute plainly bars consideration of respondents' non-constitutional claims. It allows "no judicial review of any

[5] In *Mullin*, the Supreme Court considered "whether respondents, who challenge the termination of Temporary Protected Status (TPS) for [noncitizens] from Syria and Haiti, are entitled to orders postponing the terminations during litigation" and held that "they are not." *Id.* at 2127.

> determination . . . with respect to the . . . termination" of a TPS designation. 8 U.S.C. § 1254a(b)(5)(A). The term "determination" can be used to describe either an individual decision or the whole process leading to a final decision, and under either understanding of the term, § 1254a(b)(5)(A) squarely bars all of respondents' non-constitutional claims.

146 S. Ct. at 2127-28 (ellipses in original). Referring to the National TPS Alliance litigation, the Supreme Court also explicitly noted that the government asked the Court "to stay two District Court orders that postponed the termination of Venezuela's TPS designation, and we granted those requests." *Id.* at 2130 (citing *Noem v. National TPS Alliance*, 605 U. S. 909, 145 S. Ct. 2728, 221 L.Ed.2d 981 (2025) (NATIONAL TPS ALLIANCE I); *Noem v. National TPS Alliance*, 606 U. S. 1062, 146 S. Ct. 23, 222 L.Ed.2d 1241 (2025) (NATIONAL TPS ALLIANCE II)).

In recent months, district courts have determined that *Mullin* bars federal courts from granting relief on claims involving the termination of TPS. *See Fernandez Fernandez v. Noem*, 2026 WL 2085889, at *12 ("In light of the Supreme Court's decision in *Mullin*, the undersigned finds that the termination of the TPS designation for Venezuela is not subject to judicial review."); *Avila Perdomo v. Unknown Party*, No. 1:26-cv-1930, 2026 WL 2097076, at *2 (W.D. Mich. Jul. 14, 2026) (holding that *Mullin* precludes Petitioner's claims for relief based upon an alleged violation of § 1254a(d)(4) or his prior TPS); *Jimenez-Melendez v. Oddo*, 2026 WL 2123059, at *4 (finding that the declaratory judgment in National TPS Alliance is "difficult to reconcile with *Mullin*"). This Court agrees with these district courts. To grant relief and order Petitioner's release, this Court would be required to hold that the Secretary's termination of TPS for Venezuela was unlawful. Absent further clarification by the Supreme Court or the Third Circuit, this Court finds that it is constrained by *Mullin* and lacks jurisdiction to review the Secretary's termination of TPS status for Venezuela.

For these reasons, the Court denies Petitioner's claims that he is entitled to relief based on *National TPS Alliance* and that his detention is unlawful under 8 U.S.C. § 1254a(d)(4).

Because the Court has denied the Amended Petition and the Supplement to the Amended Petition (ECF Nos. 10, 18), it also denies the motions pending at ECF Nos. 26 and 28 and denies the request for a Rule 16 conference at ECF No. 29. Having denied the claims for relief, the Court directs the Clerk to close this matter accordingly. An appropriate Order follows.

ROBERT KIRSCH
United States District Judge